Needham *et al. v.* Wright *et al.*

Filed Feb. 19, 1895.

---

No. 15,419.

NEEDHAM ET AL. *v.* WRIGHT ET AL.

ABATEMENT.—*Form of Plea.*—*Effect.*—A plea in abatement is merely a denial of the right of the plaintiff to bring and maintain the present suit, and necessarily amounts to a tacit admission of the cause of action.

SAME.—*Certainty of Plea.*—*Anticipating Reply to Plea.*—A plea in abatement must be certain in intent in every particular, and it requires the utmost fullness and particularity of statement, as well as the highest attainable accuracy and precision, leaving nothing to be supplied by intendment or construction.   The pleader must not only answer fully what is necessary to be answered, but must also an-

ticipate and exclude all such supposable matter as would, if alleged on the opposite side, defeat his plea.

SAME.—*Another Suit Pending on Same Cause of Action.*—To constitute a good plea in abatement on the ground that another cause is pending, it must be made to appear that the suit pending is for the same identical cause of action as that in which the plea is interposed, and that it is between the same parties or their privies.

PARTNERSHIP.—*Right of Survivors on Death of a Member.*—The surviving partners, on the death of one member of the partnership, are the only persons who have a right to close up the business of the partnership, to collect its assets and to bring suits to enforce its rights.

SAME.—*Death of Member.*—*Effect.*—The death of a member of a partnership has the effect to dissolve it.

SAME.—*Assignment for Benefit of Creditors by Individual Partner.*—An assignment for the benefit of his creditors by a member of a partnership, of all his individual property, does not deprive the partnership of the right to control its assets.

SAME.—*Surviving Partners.*—*Relationship to Each Other.*—*Possession of Assets.*—*Distribution.*—*Case Disapproved.*—Surviving partners are nearer joint tenants than tenants in common. They are trustees for winding up the affairs of the partnership, and they have the right of possession of all the firm property pending settlement. After payment of all the obligations of the firm, the residue of the assets is distributed among the several surviving members and the representatives of the deceased members. *Stair* v. *Richardson,* 108 Ind. 429, disapproved.

SAME.—*Surviving Partners.*—*Receiver.*—*Possession.*—It is only after the appointment of a receiver that the settlement of the partnership affairs can be taken out of the hands of the surviving partners.

ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Receiver's Right to Possession.*—A receiver appointed for a partnership before such partnership makes an assignment, has the right of possession of the firm assets as against the assignee.

From the Marion Circuit Court.

*S. Claypool, W. A. Ketcham, C. Martindale* and *S. M. Shepard,* for appellants.

*J. M. Butler, Sr., J. M. Butler, Jr.,* and *A. H. Snow,* for appellees.

HOWARD, J.—The facts and events leading up to the bringing of this action are substantially the same as

those upon which was founded the case of *Rand, Rec.,* v. *Wright,* 141 Ind. 226.

As appears from that case, certain persons constituting the Indiana Banking Company, entered into written articles of agreement, forming a copartnership under the name and style of the Indiana Banking Company, for the purpose of carrying on the business of banking in the city of Indianapolis for the period of five years from the first day of March, 1875, with a proviso that the life of the partnership might, at the end of that time, be extended; that by other articles of agreement the partnership was so extended for two years from the first day of March, 1880; that one of the partners died in March, 1881, and, in accordance with the terms of the articles of agreement, the widow of the deceased partner took his place in the firm; that another of the partners retired in February, 1882, at which time the remaining partners, together with the widow of the deceased partner, entered into a new copartnership, which latter continued from March 1, 1882, until August, 1883, when the company became insolvent, and, in a suit brought by one of the partners to wind up the business, a receiver was appointed.

It also appears from the case of *Rand, Rec.,* v. *Wright, supra,* that in February, 1878, during the period of original partnership, purchase was made from appellees by the banking company of certain capital stock of the First National Bank of Indianapolis, No. 55; in which transaction, it is alleged in the complaints in both cases, a fraud was practiced by appellees upon said company, which alleged fraud is the foundation of the cause of action in this case, as it was in the other.

The action in the case at bar was brought by appellants as surviving partners of the original copartnership, established in 1875; the cause of action, if any,

having accrued during the term of that partnership, and in its favor.

To the complaint alleging the facts upon which the claim is based, the appellees filed four pleas in abatement; to the first, third and fourth of which pleas, demurrers for want of facts were overruled; and to the second of which a demurrer for want of facts was sustained. The overruling of the demurrers to the first, third and fourth pleas in abatement is assigned as error.

Afterwards issues were joined on the first, third and fourth pleas in abatement, and the cause was submitted to the court for trial. There was a special finding and conclusions of law on which judgment was entered abating the action.

Errors are assigned on the conclusions of law, and also on the overruling of a motion for a *venire de novo*, and a motion for a new trial.

The second conclusion of law was: "That from the first day of March, 1875, to the first day of March, 1882, the firm conducting the business under the style of the 'Indiana Banking Company,' was, in fact, the same firm, and a practical continuation of the identical partnership."

To this conclusion the appellees excepted, and they have assigned cross-error thereon.

As we view the case, however, we are of opinion that it may best be determined on a consideration of the ruling of the court in sustaining the first, second, and third pleas in abatement.

While a plea in bar is a denial of the existence of the alleged cause of action itself, a plea in abatement is merely a denial of the right to bring the present suit. The plea in abatement amounts therefore to a tacit admission of the cause of action; it is a dilatory plea.

In 1 Chitty Pl. 462 (16th Am. ed), it is said: "The criterion or leading distinction between a plea in abatement and a plea in bar is, that the former must not only point out the plaintiff's error, but must show him how it may be corrected, and furnish him with materials for avoiding the same mistake in another suit in regard to the same cause of action; or, in technical language, must give the plaintiff a better writ."

It is further said in the same authority, p. 473, that: "As pleas in abatement do not deny, and yet tend to delay the trial of the merits of the action, great accuracy and precision are required in framing them. They should be certain to every intent, and be pleaded without any repugnancy."

In Stephen Pl. 352 (9th Am. ed.), it is said that dilatory pleas "are regarded unfavorably by the courts, as having the effect of excluding the truth;" and therefore that they "must be certain in every particular; which seems to amount to this, that they must meet and remove by anticipation every possible answer of the adversary." And at p. 431, it is said in the same work: "The plea must, at the same time, correct the mistake, so as to enable the plaintiff to avoid the same objection in framing his new writ or declaration."

In Gould Pl., sections 52, 57, 58, 59, in speaking of the certainty required in pleas in abatement and other dilatory pleas, the rule is stated even more strongly: "Certainty of this sort, or 'to a certain intent in *every particular*,' requires the utmost fullness and particularity of statement, as well as the highest attainable accuracy and precision, leaving, on the one hand, nothing to be supplied by intendment or construction; and on the other, no supposable special answer unobviated. The rule requiring this degree of certainty, is a rule not of *'construction'* only, but also of *'addition;'* that is, it re-

quires the pleader, not only to answer fully what is necessary to be *answered;* but also to *anticipate* and exclude all such supposable matter, as would, if alleged on the opposite side, *defeat* his plea.''

The rule as thus given by the text writers is followed in this State. *Board, etc.,* v. *Lafayette, etc., R. R. Co.,* 50 Ind. 85 (117); *Kelley* v. *State,* 53 Ind. 311 (312). See, also, 1 Am. and Eng. Encyc. of Law 11, and notes.

The first plea in abatement, in the case under consideration, is that another suit based on the same cause of action was pending in the Marion Superior Court at the time of bringing this suit.

To constitute a good answer of another cause pending, it must appear that the suit pending is for the same identical cause of action as that in which the answer is interposed, and that it is between the same parties or their privies. *Kelsey* v. *Ward,* 16 Abb. Pr. 98; 32 How. Pr. 618; *Haire* v. *Baker,* 5 N. Y. 357; *Goddard* v. *Benson,* 15 Abb. Pr. 191; *Bourland* v. *Nixon,* 27 Ark. 315; 1 Chitty Pl., notes, 470. See, also, *Loyd* v. *Reynolds,* 29 Ind. 299; *Dawson* v. *Vaughan,* 42 Ind. 395; *Bryan* v. *Scholl,* 109 Ind. 367.

The other suit which this plea alleges was pending when this suit was brought, is that of *Rand, Rec.,* v. *Wright, supra.*

In that suit, it will be remembered, the receiver was appointed for the last Indiana Banking Company, organized in pursuance of the articles of agreement made in February, 1882.

The plaintiffs in the suit at bar are the surviving partners of the First Indiana Banking Company, organized in pursuance of the articles of agreement made in 1875. The first plea in abatement does not show by direct averment that the cause of action in this suit, and which accrued in 1878, during the first partnership, and in favor

of that partnership, ever passed to the company organized in February, 1882, and in which the receiver was appointed. That at least a second partnership, if no more, was formed appears from the plea itself.

The death of Morrison, one of the original partners, in March, 1881, is alleged, which death, in law, worked a dissolution of the original firm, and in February, 1882, another partner, Miller, sold his interest to the remaining partners. At the same date Mary Morrison bought an interest in the firm and became a partner. It is clear, then, from the plea, that one partnership was dissolved by the death of a partner in March, 1881, and that another partnership was formed in February, 1882. Whether the cause of action in question was transferred to the new firm as an asset, or whether it remained the individual property of the living members of the old firm and the legal representatives of the deceased member, or whether, finally, it vested in the surviving partners of the old firm, does not appear from the plea with that certainty which we have seen is necessary in a plea of abatement.

By one averment in the plea it is said: "That on or about March 15, 1881, William H. Morrison died, being a partner of said firm at the time of his death; that after the death of said Morrison said banking business was continued without any settlement thereof."

If that be true, the appellants, the surviving partners of the firm, as it existed at the death of William H. Morrison, are the only persons who have a right to close up the business of that partnership and to collect its assets, including the right to bring this suit. Parsons Partnership, sections 32, 286, 342; *Willson* v. *Nicholson*, 61 Ind. 241; *Anderson* v. *Ackerman*, 88 Ind. 481.

In any view the plea is bad under the strict rules required in pleas of abatement.

In the third plea in abatement, in addition to the averments in the first plea, it is stated that on the 16th and 20th days of August, 1883, all the appellants, except William Needham, voluntarily assigned all their property for the benefit of their creditors, including the asset here considered; that these appellants can not, therefore, be the proper parties plaintiff.

The plea also shows that a receiver was appointed for the last Indiana Banking Company on August 13, 1883, and that all these appellants were partners of that company. Their interest in the right of action here considered could not, therefore, go to their assignees by said voluntary assignments, whether we consider them as members of the last partnership or of the first. If the asset did pass from the old partnership to the new, then it went to the receiver, and could not afterwards be assigned. If, on the other hand, the old company was never closed up, it is still in existence and in possession of this asset, and the surviving partners are the only ones who have a right to collect it. The individual assignments of the members could not take away from the company its assets; such assets must be collected by the surviving partners for the benefit of their creditors. The third plea is therefore also bad.

The fourth plea, like the third, is for want of proper parties plaintiff. This plea is more comprehensive than any of the others. It embraces all matters relating to the history of the Indiana Banking Company, sets out in full the articles of partnership entered into in 1875, also those of 1880 and 1882. It also sets out the assignments in full. It avers the death of William H. Morrison, one of the partners, in March, 1881, and that the affairs of the partnership were continued without settlement after his death.

The plea, as a conclusion from the articles of agree-

ment of 1875, avers that the partnership formed under those articles expired March 1, 1880, and that the members thereof immediately went into the possession of all the assets of the firm as tenants in common.

But, as held in the case of *Rand, Rec., v. Wright, supra,* the partnership of 1875 did not terminate on March 1, 1880, but was, in compliance with the terms of the original articles of agreement, continued for two years longer, and would not, therefore, have terminated until March 1, 1882, were it not for the death of William H. Morrison in 1881.

Neither was the plea correct in concluding that on the dissolution of a partnership, whether by death or otherwise, the partners became tenants in common of the partnership property.

It is true that in *Stair* v. *Richardson,* 108 Ind. 429, there is an inadvertent expression to the effect that "after dissolution, former members are tenants in common." The statement was unnecessary to the decision of that case. Surviving partners are rather joint tenants than tenants in common. They are trustees for the winding up of the affairs of the partnership; and all the property of the firm goes to the survivors pending settlement. It is only after payment of all debts and obligations of the firm by the surviving partners that the residue is distributed to the several members and to the representatives of deceased members. Bates Partnership, sections 183, 685, 686, 687. See, also, *Roberts* v. *McCarty,* 9 Ind. 16; *Nicklaus* v. *Dahn,* 63 Ind. 87; *Indiana, etc., R. W. Co.* v. *Adamson,* 114 Ind. 282.

It is only by the appointment of a receiver that the settlement of partnership affairs can be taken out of the hands of the surviving partners.

What we have said makes it clear that under the averments of this plea, and keeping in mind the certainty re-

quired in pleas in abatement, neither Mary Morrison, as administratrix or as widow of her deceased husband, nor the individual assignees of the appellants, were proper parties plaintiff to collect the asset here in question, nor any other assets of the original banking company; neither does the plea show that such asset was transferred from the original company to the last company, in which the receiver was appointed.

The third and fourth pleas are treated as pleas in abatement, inasmuch as the parties on the trial and on this appeal have so treated them.

The question here for decision is not whether, in fact, the appellants were not the proper parties to institute this action; but, rather, whether it appears, from the pleas in abatement, that they were not the proper parties plaintiff. We are of opinion that the pleas in abatement were insufficient.

The judgment is reversed, with instructions to sustain the demurrers to the several pleas in abatement.

